# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES, ex rel., RIECK GROUP, LLC, et al., | : | |
| | : | |
| Plaintiffs, | | Case No. 3:08cv00172 |
| | : | |
| vs. | | District Judge Walter Herbert Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| MONARCH CONSTRUCTION COMPANY, et al., | : | |
| | | |
| Defendants.[1] | : | |

## REPORT AND RECOMMENDATIONS[2]

## I.   INTRODUCTION

This case concerns the potential financial liability arising from delays to the completion of a construction project on the Wright Patterson Air Force Base near Dayton, Ohio.

Plaintiff United States of America for the use and benefit of Rieck Group LLC (Plaintiff Rieck Group) brings this case against two Defendants: (1) Monarch Construction Company, the prime contractor for the construction of certain multipurpose hangars at Wright Patterson Air Force Base; and (2) Federal Insurance Company, the surety on a payment bond to the United States of America related to the construction of

---

[1] Monarch Construction Company is also a Counter Claimant. Rieck Group, LLC is the Counterclaim Defendant.

[2] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

these hangars. Plaintiff Rieck Group claims that Monarch Construction Company is liable for violations of the Miller Act, 40 U.S.C. §3133, and is also liable under various theories of state law – for example, breach of contract, breach of covenant of good faith and fair dealing, and violations of Ohio's Prompt Pay Act, Ohio Rev. Code §4113.61(A)(1).[3] (Doc. #17 at 4-10).

Monarch Construction raises two counterclaims: one seeking "Delay Damages," the other for "Breach of Indemnity." (Doc. #18 at 10-13).

The case is before the Court upon Plaintiff Rieck Group's Motion For Partial Summary Judgment (Doc. #27), Defendants' Cross Motion For Partial Summary Judgment (Doc. #30), Plaintiff Rieck Group's Memorandum In Opposition (Doc. #31), Defendants' Reply (Doc. #33), Plaintiff Rieck Group's Supplemental Reply (Doc. #37), and the record as a whole.

## II. BACKGROUND

### A. The Pleadings

Monarch Construction was the prime contractor for the U.S. Army Corps of Engineers on a project involving the construction of several C-5 multipurpose hangars at Wright Patterson Air Force Base (contract #W912QR-05-0014).[4] (Doc. #17 at ¶6). In August 2005 Plaintiff Rieck Group entered into a subcontract with Monarch Construction to provide labor and materials for the construction of the hangars. The pertinent subcontract (contract #0501-45-C-5) was in the amount of $2,800,000.00. (Doc. #17 at ¶8).

Plaintiff Rieck Group alleges that Monarch Construction caused certain delays in

---

[3] Plaintiff Rieck Group seeks to hold both Defendants liable for the alleged Miller Act violations. (Doc. #17 at 9). Plaintiff Rieck Group seeks to hold only Monarch Construction liable under its remaining its remaining theories. *Id*. at 9-10.

[4] Although the contract involved the construction of several multipurpose hangars, only one is at issue in this case. *See* Doc. #17, ¶s 10-13. At present, construction of each hangar required by the prime and sub-contracts has been completed. *See id*.; *see also* Doc. #18, ¶ 13.

the construction of one hangar (the Hangar), causing Plaintiff Rieck Group to incur increased costs (overruns) for equipment rental, materials, and labor. Plaintiff Rieck Group alleges that delays on the construction of the Hangar were the direct result of Monarch Construction's "failing to follow the original construction schedule, failing to timely coordinate the activities of all subcontractors and their work in order to manage the efficient and timely construction of the Hangar." (Doc. #17, ¶14). And Plaintiff Rieck Group allegedly incurred additional costs over the subcontract due to the following delays:

> (a) MCC [Monarch Construction] failed to timely turn in submittals to the COE [Corps of Engineers] for approval of the roofing and siding for the Hangar; (b) MCC failed to receive approval of the roofing in February, then again in June 2006, and had to resubmit the roofing and siding for approval in July 2006, and did not receive approval of the roofing until September 2006, one month before the original completion date, with the direct result that construction work on the Hangar was exposed to the weather and elements during that time period; and (c) MCC altered the original construction schedule after construction began by delaying the installation of the slab flooring, with the direct result that Rieck's labor and equipment costs were increased because there was no installed floor surface on which to work, as had been set forth when Rieck submitted its bid on the Project, which increased Rieck's total labor and equipment costs.

(Doc. #17 at ¶15). Monarch Construction denies these allegations. (Doc. #18, ¶s 14, 15).

On November 15, 2007, Plaintiff Rieck Group sent a letter to Monarch Construction, which is attached as Exhibit C to the Amended Complaint. (Doc. #17, ¶17). Monarch Construction acknowledges that the Exhibit C is a true and accurate copy of the November 15, 2007 letter. (Doc. #18, First Defense at ¶18). In the letter Rieck Group, LLC's chief financial officer asks Monarch Construction for an "Equitable Price Adjustment" for the Hangar project. (Doc. #17, Exh. C). The letter notes that December 16, 2006 was the original completion date for the Hangar project and that the expected completion date was (at that time) December 31, 2007. The letter then lists five reasons for cost overruns and states, "The total amount of the claim ... is $875,931.88...." *Id*. at

p.2.  Attached to the letter are numerous documents addressing, in part, the delays and explaining how the total amount of $875,931.88 was calculated.  Plaintiff Rieck Group asserts in its Amended Complaint that despite its timely, proper, and ongoing notice to Monarch Construction, this amount remains due on the Subcontract due to additional costs, labor, and material overruns.  *Id*. at ¶24.   Monarch Construction denies these assertions.  (Doc. #18, First Defense at ¶24).

Plaintiff Rieck Group alleges that it "complied with Section 4, Subsection B of the Subcontract, and upon completion of its work, including all issued and agreed change orders, promptly submitted to MCC its invoice for final payment, including the retainage in the amount of $265,278.00, which has been due and owing since February 26, 2008." (Doc. #17, ¶20).  Monarch Construction concedes that it received an invoice for purported retainage in the amount $265,278.00 but otherwise denies these allegations. (Doc. #18, First Defense at ¶20).

Monarch Construction maintains, "Throughout the course of the Project, Rieck periodically provided fully executed documents denominated Receipt and Waiver of Mechanic's Lien Rights...."  (Doc. #18, Counterclaims at ¶10).  Plaintiff Rieck Group admits this.  (Doc. #26 at ¶10).  Monarch Construction has attached to its Answer and Counterclaims copies of these Receipt and Waivers.

## B. "Waiver" Facts

The Subcontract between Rieck Group, LLC and Monarch Construction contained several provisions under the heading "Time Schedule."  (Doc. #30, Exh. A at ¶3).  One provision states:

> B. Extensions of Time.  Subcontractors shall not be entitled to any increase in the amount of this contract price or to damages by reason of any delay unless the Owner is liable for such increases or damages and pays the same to MCC.

*Id.*  Monarch Construction indicates that the "Owner" refers to the Corps of Engineers.

(Doc. #30 at p. 5).

Monarch Construction emphasizes that Rieck periodically provided Monarch Construction with fully executed Receipt and Waiver of Mechanic's Lien Rights, the final one, effective February 7, 2008, is attached to Monarch Construction's Cross Motion For Summary Judgment and appears to contains the signature of Rieck Mechanical Svs. Inc.'s Chief Financial Officer. (Doc. #30, Exh. C). That document states in part:

> The undersigned waives all claims for extra labor, skill, services, materials, and equipment performed, furnished or commenced prior to the effective date of his lien waiver which has not been authorized and a contract price agreed upon by MONARCH CONSTRUCTION in writing.

*Id*.

On May 17, 2008, Plaintiff Rieck Services filed the instant case in this Court.

In support of its Motion for Partial Summary Judgment, Plaintiff Rieck Group submits a letter dated September 23, 2008 from Monarch Construction's President to Rieck Service's President. (Doc. #27, Harold Rieck's Affidavit, Exh. 1). Along with the letter, Monarch Construction sent Rieck Services a $180,000 check. The letter explained in part:

> This payment represents a partial release of retainage to Rieck. This payment is not intended to indicate any waiver of any claim or defense of Monarch Construction Company relating to Rieck and is not intended to be an admission of any fact or legal theory.

(Doc. #27, Harold Rieck's Affidavit, Exh. 1). Monarch Construction also attached to this letter another, "Receipt and Waiver of Mechanic's Lien Rights," containing the same waiver language, quoted above, that was included prior similar Receipt and Waivers. *See id*. Unlike the other Receipt and Waivers, *see* Doc. #18 (attached Exhs.), no signature by a representative or officer of Rieck Services, Inc. appears on this Receipt and Waiver, which by its language would have become effective on June 1, 2008. (Doc. #27, Harold Rieck's Affidavit, Exh. 1).

Over the following few weeks, the parties' dispute continued to crystallize. On

September 29, 2008, Rieck's President sent a letter to Monarch Construction thanking them for the $180,000 check but also stating, "Like your other payments, I believe these documents are intended as a partial release of only those items listed on the check stub and that Rieck's acceptance of this payment would not indicate a waiver of any claim or defense of Rieck Services and that it is not intended to be an admission of any legal fact or theory." (Doc. #27, Rieck's Aff., Exh. 2).

On October 6, 2008, Monarch Construction's President retorted by letter, "we disagree strongly with your characterization of the previously executed Waivers and Indemnifications." *Id*., Exh. 3. The letter further explains that pursuant to the waiver language in the prior "Release and Waiver" documents, "Rieck's delay claims, all of which were asserted before February 7, 2008, have been waived...." *Id*.

October 17, 2008, Reick Services' President wrote back emphasizing his disagreement with Monarch Construction's President construction of the waiver language in the prior "Release and Waiver" documents. *Id*., Exh. 4.

On November 6, 2008, Monarch Construction's President sent Rieck Services a $50,000 check and a letter stating, "This payment represents the final release of retainage to Rieck. This payment is not intended to indicate any waiver of any claim or defense of Monarch Construction Company related to Rieck...." *Id*., Exh. 5.

Rieck services has not deposited the two "retainage" checks – totaling $230,000 ($180,000 + $50,000) – it received from Monarch Construction. (Doc. #27 at p. 5).

### III.  SUMMARY JUDGMENT STANDARDS

The parties have submitted dual or cross motions for summary judgment. Resolving such competing motions does not alter the applicable legal standards described in Fed. R. Civ. P. 56. "'The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as submitted for final resolution on a stipulated record.'" *Taft Broadcasting Company v. United States*, 929 F.2d 240, 248 (6th

Cir. 1991) (citations omitted). Instead the Court grants or denies each motion for summary judgment on its own merits, applying the standards of Rule 56. *See id*., 929 F.2d at 248.

Under Rule 56 a party is entitled to summary judgment when there is no genuine dispute about any material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247 (1986).

> The moving party bears the burden of demonstrating that there are no genuine issues of material fact, which may be discharged by 'showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case. The nonmoving party must then put forth 'significantly probative' evidence supporting its claims in order to defeat summary judgment. Of course, we must be mindful that summary judgment is inappropriate whenever the evidence raises a genuine issue of material fact, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Macy v. Hopkins County School Bd. of Educ*., 484 F.3d 357, 363 (6th Cir. 2007) (internal citations and quotation marks omitted); *see Hager v. Pike County Bd. of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

## IV. ANALYSIS

### A. The Parties' Contentions

In their respective pleadings, Plaintiff Rieck Group and Defendant Monarch Construction each blame the other for the delay in the construction of the Hangar and each seeks to recover delay damages from the other.

Plaintiff Rieck Group (in its role as counterclaim Defendant) seeks partial summary judgment on Monarch Construction's counterclaim for delay damages. They reason that Ohio law – specifically Ohio Revised Code §4113.62(C)(2) – voids the waiver language in the Subcontract and in the periodic Release and Waivers. And for this same reason, Plaintiff Rieck Group further asserts that the purported waiver language in the

Subcontract and the Release and Waiver documents does not bar it from seeking to delay damages against Monarch Construction.

In their cross motion for summary judgment, Defendants contend that Plaintiff Rieck Group is not entitled to delay damages pursuant to §3(B) of the Subcontract because this provision exposes Monarch Construction to liability for delay damages only if the Corps of Engineers paid such delayed damages to Monarch Construction, which it has not.

Relying on *B.I. Chipping Co. v. R.F. Scurlock Co.*, 2005 WL 3484306 (Ohio Ct. Apps, 10th Dist., Dec. 20, 2005), Defendants reason that "subcontract delay provisions like the one featured in this case have been upheld in the face of challenges under [Ohio Rev. Code] §4113.62(C). The reason is that such delay provisions do not completely preclude liability for delay." (Doc. #30, p.6).

**B.    Analysis**

Ohio statutory law generally and strongly disapproves of provisions in construction contracts purporting to waive or preclude liability for delay damages as follows:

> Any provision of a construction subcontract, agreement, or understanding, or other documentation that is made part of a construction subcontract, agreement, or understanding, that waives or precludes liability for delay during the course of a construction subcontract when the cause of the delay is a proximate result of the owner's or contractor's act or failure to act, or that waive any other remedy for a construction subcontract when the cause of the delay is a proximate result of the owner's or contractor's act or failure to act, is void and unenforceable as against public policy.

Ohio Revised Code §4113.62(C)(2). *Inland Waters Pollution Control, Inc. v. Marra/Majestic Joint Venture*, 2008 WL 5732798 at *8 (N.D. Ohio, June 17, 2008)(citations omitted).

In the present case the Subcontract between Rieck Group, LLC and Monarch Construction contained a provision – paragraph 3(B) – which precluded subcontractors

from seeking delay damages "unless the Owner [the Corps of Engineers] is liable for such .. damages and pays the same to MCC [Monarch Construction]." *Supra*, §II(B). The plain and unambiguous language of this provision prevents subcontractors, like Plaintiff Rieck Group, from recovering delay damages in all situations except one – when the Corps of Engineers was liable for the delay and paid damages to Monarch Construction. This provision thus violates Ohio public policy because it completely insulates Monarch Construction from potential liability for any delay it proximately caused through its own acts or omissions. *See* Ohio Rev. Code §4113.62(C); *see also Acme Contracting, LTD. v. Toltest, Inc.*, 2008 WL 1990780 at *15 (E.D. Mich., May 5, 2008)(recognizing that Ohio Rev. Code §4113.62(C)(2) "provides that provision in a construction contract that waives or precludes liability for delay, when the cause of the delay is a proximate result of the contractor's act or failure to act, is void and unenforceable as against public policy.").

Monarch Construction's reliance on the exception in Paragraph 3(B) only succeeds in showing that Plaintiff Rieck Group could potentially recover delay damages in one situation: when the Corps of Engineers acknowledged its liability for its own delays and compensated Monarch Construction accordingly. As a factual matter, Plaintiff Rieck Group does not allege that the Corps of Engineers caused or was liable for the delays. Instead, Plaintiff Rieck points only to Monarch Construction. It alleges, for example: (a) Monarch Construction failed to timely turn in submittals to the Corps of Engineers for approval of roofing and siding to the Hangar; (b) Monarch Construction did not receive approval for roofing until September 2006, one month before the original completion date; and (c) Monarch Construction altered the original construction schedule by delaying installation of the slab flooring leaving Plaintiff Rieck without a floor on which to work. *See supra*, §II(A). Because Plaintiff Rieck Group seeks to hold Monarch Construction liable – not the Corps of Engineers – Paragraph 3(B)'s exception does not apply, thus leaving intact the complete bar Paragraph 3(B) erects to Plaintiff Rieck Group's claim for delay damages against Monarch Construction. This complete bar violates Ohio public

policy and is therefore void. *See* Ohio Rev. Code §4113.62(C); *see also Acme Contracting, LTD. v. Toltest, Inc.*, 2008 WL 1990780 at *15

Contrary to Monarch Construction's further contentions, the waiver language in the periodic "Release and Waivers" submitted by Monarch Construction to Rieck Services Ltd. Inc. violates Ohio public policy. Ohio Rev. Code §4113.62(C)(2) broadly encompasses not just construction subcontracts but also agreements, or understandings, "or other documentation that is made part of ..." such subcontracts. *Id.* A review of the parties' Release and Waivers reveals that they concerned partial payments by Monarch Construction for "labor, skill, service, equipment or materials delivered or furnished to..." the Hangar. *See, e.g.*, Doc. #30, Exh. C. As such, these documents were directly related to and were intended to limit Monarch Construction liability under the original subcontract. As a result, Monarch Construction intended that the Releases and Waivers were part of the parties' original subcontract. The documents, moreover, contained waiver language seeking to limit or preclude Rieck Mechanical Svs. Inc. from seeking delay damages against Monarch Construction. As a result, the waiver language in these documents is void under Ohio law. *See* Ohio Rev. Code §4113.62(C).

Monarch Construction contends that *B.I. Chipping v. R.F. Scurlock Co.*, 2005 WL 3484306 (Ohio Ct. Apps., 10th Dist., Dec. 20, 2005) is directly on point and establishes that Paragraph 3(B) in the Subcontract does not violate Ohio public policy. This contention lacks merit.

In *B.I. Chipping* the Ohio Court of Appeals held that a certain construction contract provision did not violate Ohio public policy because it did not completely preclude the subcontractor from seeking delay damages. The delay in *B.I Chipping* was not caused by the subcontractor (B.I. Chipping Co.) or the contractor (R.F. Scurlock Co.) or the Owner (the Ohio Department of Transportation). Instead, the delay was caused by another party to a separate contract (American Electric Power and/or Verizon). 2005 WL 3484306 at *1-*3.

Through language in the parties' subcontract, B.I. Chipping allowed R.F. Scurlock, on its own behalf, to seek delay damages from the Ohio DOT. 2005 WL 3484306 at *5. Keeping in mind that R.F. Scurlock was not at fault for the delay, it sought and obtained delay damages from the Ohio DOT in the amount of $25,000 and, in turn, paid B.I. Chipping $10,000. B.I. Chipping objected, arguing that the contract language binding it to R.F. Scurlock was void under Ohio Rev. Code §4113.62(C). "The trial court found that because the contract allows appellant to recover for delays in the amount that appellee receives through the ODOT claims process, and thus does not preclude *all liability* for delays, R.C. 4113.62(C) does not apply...." 2005 WL 3484306 at *3. The Ohio Court of Appeals affirmed, reasoning, "appellant [B.I. Chipping] agreed to seek damages for delay through the ODOT claims process, and agreed to allow appellee [R.F. Scurlock] to act on its behalf in that process. This limitation in the agreement does not render the contract unenforceable by virtue of R.C. 4113.62(C)...." 2005 WL 3484306 at *5.

The present case is factually distinguished from *B.I. Chipping*, because the party at fault for the delay in *B.I. Chipping* was not the prime contractor. As a result, the parties' subcontract provided them with a remedy in delay damages, albeit a partial one, and therefore did not violate Ohio Rev. Code §4113.62(C). *B.I. Chipping* simply does not address the situation at issue in the present case, where the contractor – Monarch Construction – allegedly was the sole moving force behind the delays.

There is, moreover, a potential absurdity underlying Monarch Construction's position, that was not at work in *B.I. Chipping,* where again another party was at fault and both the contractor and subcontractor had an avenue to seek delay damages, leaving them with a partial remedy. In the present case, if the subcontract exception language – "unless the Owner [Corps of Engineers] is liable for such increases or damages and pays the same to MCC" – is applied to the present situation, then Monarch Construction finds itself in the absurd position of seeking to recover delay damages from the Corp of Engineers due to its own delay. The likely result would be a denial – why would the Corps of Engineers

11

reward a contractor for its own delays? – leaving Plaintiff Rieck Group with no remedy at all, unlike the subcontractor in *B.I Chipping*. In addition, this exception language only applies when the Owner is potentially liable for the delay. Consequently, the exception would provide no relief, partial or whole, to Plaintiff Rieck Group, if Monarch Construction was the sole party responsible for the delays. Thus, for all these reasons, and contrary to Monarch Construction's contentions, *B.I. Chipping* is not directly on point and does not assist Monarch Construction in avoiding Ohio's public policy against waiver provisions in construction subcontracts where the prime contract caused the delays.

### C. Conclusions

Paragraph 3(B) of the parties' Subcontract violates Ohio public policy and does not preclude Plaintiff Rieck Group from seeking to recover delay damages against Monarch Construction in this case. *See* Ohio Rev. Code §4113.62(C)(2). The waiver language in the parties' Release and Waiver documents violates Ohio public policy. *See id*.

Plaintiff Rieck Group's Motion for Partial Summary Judgment is well taken and the waiver language in the Subcontract and Release and Waivers does not preclude Plaintiff Rieck Group from seeking to delay damages in this case.

Defendants' Cross Motion for Summary Judgment lacks merit.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff Rieck Group's Motion For Partial Summary Judgment (Doc. #27) be GRANTED; and

2. Defendants' Cross Motion For Partial Summary Judgment (Doc. #30) be DENIED.

| August 10, 2009 | s/Sharon L. Ovington |
|---|---|
| | Sharon L. Ovington |
| | United States Magistrate Judge |

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).